U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
NOV 1 6 2018
CLERK U.S. DISTRICT COURT
By: _____
    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| MELODIE GAYE SPEARS,<br>  PLAINTIFF,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>ACTING COMMISIONER OF<br>SOCIAL SECURITY,<br>  DEFENDANT. | §<br>§<br>§<br>§  CIVIL ACTION NO. 4:17-CV-869-A<br>§<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C § 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

**FINDINGS AND CONCLUSIONS**

**I.   STATEMENT OF THE CASE**

Plaintiff Melodie Gaye Spears ("Spears") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). In January 2015, Spears filed an application for DIB, alleging her disability began on January 29, 2014. (Transcript ("Tr.") 20, 133–136.) On June 11, 2015, after her application for DIB was denied initially and on reconsideration, Spears requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 20, 52–78, 81–82.) On June 18, 2015, Spears filed an application for SSI. (Tr. 20, 137–157.) The

ALJ held a hearing on both applications on June 16, 2016, and he issued an unfavorable decision on August 17, 2016. (Tr. 17–27, 32–51.) On August 24, 2017, the Appeals Council denied Spears' request for review, leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1–6.) Spears subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance and SSI benefits are governed by Title II and Title XVI of the SSA, respectively. *See* 42 U.S.C. §§ 401–433 (Title II); 42 U.S.C. §§ 1381–1383f (Title XVI). In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).[1]

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is defined as work activity involving the use of significant physical or

---

[1] The Court notes that several of the regulations and applicable social security rulings ("SSRs") governing social security cases were recently amended or rescinded. *See, e.g.*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (F.R. Jan. 18, 2017); 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016). These new rules generally apply to claims filed either on or after January 17, 2017 or March 27, 2017, depending on the regulation. *Id.* In addition, the Court is generally to apply those rules that were in effect at the time the ALJ issued their decision. *See, e.g.*, 81 Fed. Reg. 66138-01, fn. 1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.") Thus, any cites (unless otherwise noted) will be to the old rules that are applicable to claims, such as this one, that were filed prior to 2017.

mental abilities for pay or profit. *See* 20 C.F.R. §§ 404.1510, 416.910; *see also* §§ 404.1571–404.1576, 416.971–416.976. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404. Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(f), 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experiences. *Id.* §§ 404.1520(g), 416.920(g); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Carey*, 230 F.3d at 135; *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* But if the Commissioner meets this burden, it is up to the claimant to then show that he cannot perform the alternate work suggested. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). An ALJ's decision is not subject to reversal, even if substantial evidence in the record would have supported the opposite conclusion, so long

as substantial evidence supports the conclusion reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F. 3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417 (citing *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Hollis*, 837 F.2d at 1383 (citing *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir. 1987)).

### III.   ISSUES

In her brief, Spears presents the following issues:

   A. Whether the ALJ failed to properly weigh the medical opinion evidence of Spears' treating neurologist, Dan Bartel, M.D. ("Dr. Bartel") in making the RFC determination; and

   B. Whether the ALJ failed to properly weigh Spears' credibility.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 7–15.)

### IV.   ALJ DECISION

In his August 17, 2016 decision, the ALJ found that Spears met the disability insured status requirements of the SSA through December 31, 2019 and that she had not engaged in any substantial gainful activity since January 29, 2014, the alleged onset date of Spears' disability. (Tr. 22.) The ALJ further found that Spears suffered from the following severe impairments: (1) shingles, (2) post-herpetic neuralgia, and (3) rheumatoid arthritis. (*Id.*) Next, the ALJ held that none of Spears' impairments or combination of impairments met or equaled the severity of any

4

impairment in the Listing. (Tr. 24.) As to Spears' residual functional capacity ("RFC"), the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally, 10 pounds frequently, and stand and/or walk about six hours in an eight[-]hour workday or sit about 6 hours in an 8-hour workday. She can frequently climb ramps or stairs, balance, kneel, crouch, crawl, or stoop, and never climb ropes, ladders, or scaffolds. The claimant can constantly reach, finger, handle, and feel with her right upper extremity and frequently perform the same with her left upper extremity. She has no visual or communicative limitations, but must avoid exposure to hazardous moving machinery, excessive vibration, and unprotected heights.

(Tr. 24 (emphasis omitted).) The ALJ found, based on his RFC assessment, that Spears was unable to perform any of her past relevant work. (Tr. 26.) However, based on the testimony of the vocational expert ("VE"), the ALJ found Spears capable of performing other jobs existing in significant numbers in the national economy. (Tr. 26–27.) Accordingly, the ALJ concluded that Spears was not disabled. (Tr. 27.)

## V. DISCUSSION

### A. Treating Physician Opinion and RFC Determination

To begin with, Spears argues in her brief that the ALJ failed to properly weigh the medical opinion evidence of Spears' treating neurologist, Dr. Bartel, in making the RFC determination. Specifically, Spears complains that the ALJ's decision to assign "limited" weight to the opinions from Dr. Bartel because "there are no treatment notes that corroborate the level of limitations asserted" was unsupported by any evidence of record. (Pl.'s Br. at 8–11; *see* Tr. 25.) In addition, Spears claims that the ALJ erred by failing to weigh the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) prior to rejecting Dr. Bartel's opinions. (Pl.'s Br. at 10–12.) Furthermore, Spears, citing to *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), argues that the ALJ, "after having discount[ed] the opinions from every medical source in the record, . . . failed to

5

identify any evidence, let alone substantial evidence," which supported the ALJ's RFC determination. (Pl.'s Br. at 11–12.)

RFC is what an individual can still do despite his limitations.[2] Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do, but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[3] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3–5. The responsibility for determining a claimant's RFC lies with the ALJ. *Id.* at *2. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *Id.* The ALJ is permitted to draw

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

reasonable inferences from the evidence in making his decision, but presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (superseded only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (per curiam) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704 (quoting *Harris,* 209 F.3d at 417 (quoting *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995) and citing *Johnson v. Bowen,* 864 F.2d 340, 343–44 (5th Cir. 1988))) (footnotes and quotation marks omitted).

Controlling weight is assigned to the opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. §§ 404.1527(b), (d), 416.927(b), (d). Because the determination of disability always remains the province of the ALJ, he can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett,* 67 F.3d at 566; *Greenspan,* 38 F.3d at 237; *Muse*, 925 F.2d

at 790. Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (d)(3), 416.927(d)(1), (d)(3); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); *see* 20 C.F.R §§ 404.1527, 416.927. Under the statutory analysis, the ALJ must evaluate the following factors: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(c), 416.927(c); *see* SSR 96-6p, 1996 WL 374180, at *3 (S.S.A., July 2, 1996).

In making his RFC determination, the ALJ, *inter alia*, considered the opinions of Dr. Bartel as well as other evidence, stating:

> In terms of the claimant's alleged impairments, the medical evidence reflects the claimant reported pain in the right side of her throat and jaw [to Dr. Bartel] in January 2014 accompanied by burning pain and a splotchy rash (Exhibit 2F, page 23). Upon referral to neurologist, she was diagnosed [by Dr. Bartel] with shingles and treated with anti-viral and steroid medications (Exhibit 2F, page 26). Following the course of medication, the claimant's rash subsided, but she continued to experience weakness and numbness on the right side of her face (Exhibit 2F, page 20). Physical examination [by Dr. Bartel] at that time [in February 2014] revealed hypoesthesia to light touch at the right C2-3 nerve distribution as well as diminished sensation to temperature [Exhibit 2F, page 21]. Follow-up neurological records [from Dr. Bartel] indicate she immediately experienced an additional bout of shingles as well as ongoing post herpetic neuralgia that prevented her from returning to work (Exhibit 2F, page 14). In July 2015, the claimant underwent EMG/nerve conduction testing [by Dr. Bartel] that showed L5 radiculitis on the

right and ulnar nerve lesion on the left (Exhibit 6F, page 20). She was prescribed Gabapentin for her nerve pain and reported it helped some, but did not completely alleviate her symptoms (Exhibit 2F, page 5). Her most recent neurological records [dated January 28, 2016] indicate she continues to experience episodes of shingles as well as intermittent pain on the right side of her face and neck that she describes as burning and electric shock like pain (Exhibit 10F, page 1).

After ongoing complaints of joint pain, the claimant was referred for a rheumatologic evaluation in April 2016 (Exhibits 11F and 12F). At that time, she indicated she experiences pain in her shoulders, knees, hips, arms, legs, and feet that she described as stabbing. Lab results from February 2016 showed a positive ANA and rheumatoid factor. Her physical exam revealed tenderness and reduced range of motion in her left shoulder, but was otherwise normal (Exhibit 12F, page 4). The claimant was diagnosed with rheumatoid arthritis and encouraged to perform strength exercises when her swelling and pain were minimal. At her follow-up appointment a month later, she reported some of her pain had improved (Exhibit 13F, page 11.)

At the hearing, the claimant testified she last worked as a deputy sheriff, but was unable to continue after developing shingles. She testified the pain was a disabling factor in her quitting work, but it also affected her mental ability. She testified she continues to experience flare-ups of shingles every 3-4 months that last for approximately 2 weeks, during which she takes oxycodone for the pain. When she is not experiencing a shingles flare-up, she continues to have neuralgic pain and has little use of her left shoulder due to pain.

As for the opinion evidence, the claimant's treating neurologist, Dr. Dan Bartel, submitted a medical source statement and narrative statement describing the claimant's medical conditions and limiting her to a severe[ly] reduced range of sedentary work that equated to no work, essentially (Exhibits 4F and 7F). The undersigned has considered Dr. Bartel's opinion and statement and gives them limited weight in making this decision. While Dr. Bartel's treatment notes document the claimant's difficulties with shingles and the resultant nerve pain, there are no treatment notes that corroborate the level of limitations asserted. The State agency medical and psychological consultants found the claimant's impairments nonsevere (Exhibits 1A and 4A). The undersigned gives these opinions limited weight as the evidence certainly confirms the claimant's medical conditions are more than minor irritations and result in pain that limits her ability to perform work related tasks as indicated in the above residual functional capacity assessment.

(Tr. 25-26.)

Contrary to Spears' arguments, the ALJ did not fail to properly weigh the medical opinions of Dr. Bartel. Although Spears disagrees with the amount of weight given to Dr. Bartel's opinions, the record contains substantial evidence that supports the ALJ's decision. (Tr. 25–26.) In a medical source statement dated July 16, 2015, Dr. Bartel opined, *inter alia*, that Spears: (1) could sit, stand, and/or walk for less than one hour in an eight-hour work day; (2) would need to get up from a seated position and move around every fifteen minutes for fifteen minutes; (3) could lift and carry up to twenty pounds frequently and from twenty to over fifty pounds occasionally; (4) could frequently perform reaching, handling, and reaching activities; and (5) would frequently experience pain, fatigue, or other symptoms severe enough to interfere with attention and concentration in an average eight-hour day. (Tr. 355–56.) Dr. Bartel also stated in a narrative letter dated November 15, 2015 that he believed Spears was "disabled from all gainful employment for at least the next 12 months" due to the distracting nature of her severe pain. (Tr. 442.) He further opined that Spears was "unable to sit, stand, bend, carry, push, pull or stay at work for more than an hour at a time" because of such pain "that causes nausea and vomiting." (Tr. 442.)

As noted by the ALJ, however, the evidence of record does not "corroborate the level of limitations asserted" by Dr. Bartel. (Tr. 25.) In fact, Dr. Bartel's own treatment notes contradict his opinions, instead noting normal physical examination findings for many categories, including regarding Spears' level of consciousness, back flexion, extension, and rotation, orientation, intellect, memory, and motor skills. (Tr. 25; *see, e.g.*, Tr. 266–287, 307–309, 396–398, 463–465.) In addition, Spears testified, *inter alia*, at the hearing before the ALJ that she can take care of her house by cleaning, doing laundry, vacuuming, sweeping, mopping, dusting, and cooking. (Tr. 40–41.) In addition, Spears stated that she could read, attend church, drive, and go to the grocery store. (Tr. 41–43.) Because the ALJ has discretion to increase or decrease the weight given to the

opinion of the treating physician for good cause, including medical opinions that are brief, conclusory, or unsupported by other substantial evidence in the record, the ALJ did not err in affording "limited" weight to Dr. Bartel's opinion.

Spears, in her brief, also suggests that the ALJ improperly evaluated Dr. Bartel's opinion because he did not explicitly reference each of the six factors set forth in 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c). (Pl.'s Br. at 11.) The Court disagrees as the ALJ's opinion reflects appropriate consideration of each of the six factors. (Tr. 22–27.) To begin with, the ALJ specifically stated in his decision that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927." (Tr. 24.) Furthermore, as to factors one and two, where the ALJ is to evaluate the examining and treatment relationship between Spears and Dr. Bartel, the ALJ specifically acknowledged that Dr. Bartel was Spears' treating neurologist and referenced: (1) the November 2015 narrative letter and July 2015 medical source statement written by Dr. Bartel indicating Spears was under his care and (2) treatment notes written by Dr. Bartel indicating a previous ongoing treatment relationship with Spears. (Tr. 25; *see, e.g.*, Tr. 266–287, 307–309, 396–398, 463–465.)

As to factors three, four, and six, in which the ALJ evaluates the supportability and consistency of the physician's opinion as well as any other supportive or contradictory factors, the ALJ explained that he had "considered Dr. Bartel's opinion and statement and [gave] them limited weight." (Tr. 25.) The ALJ reasoned that "[w]hile Dr. Bartel's treatment notes document the claimant's difficulties with shingles and the resultant nerve pain, there are no treatment notes that corroborate the level of limitations asserted." (Tr. 25.) Although the ALJ did not go through specific inconsistencies between the medical record and Dr. Bartel's opinion, the trial record is replete with evidence sufficiently demonstrating that Dr. Bartel's opinion of marked limitations

does not comport with the lesser limitations recorded in the vast majority of Dr. Bartel's treatment notes. (Tr. 25; *see, e.g.*, Tr. 266–287, 307–309, 396–398, 463–465.) Furthermore, as noted above, Spears testified at her ALJ hearing that she regularly completes a variety of household tasks and leaves her house to go shopping, attend church, and visit family. (Tr. 40–43.)

As to factor five, more weight is generally given "to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). In this case, the ALJ specifically referenced "the claimant's treating neurologist, Dr. Dan Bartel," indicating the ALJ's awareness of Dr. Bartel's status as a specialist. (Tr. 25.) Because the ALJ thoroughly reviewed Dr. Bartel's opinion, including consideration of the six *Newton* factors, stating both the weight given to the opinion and the reason for giving such weight, there is no reversible error.

As to Spears' arguments based on *Ripley v. Chater*, the Court finds that such case is distinguishable from the facts in this case. In *Ripley*, the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion. 67 F.3d at 557. The Fifth Circuit Court of Appeals, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem but not clearly establishing the effect that condition had on his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557–58. The Fifth Circuit rejected the Commissioner's argument that the medical evidence that discussed the extent of the claimant's injuries substantially supported the ALJ's conclusion because the Court was unable to determine the effects of the claimant's condition, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 558 n. 27.

As noted above, the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record. *Perez v. Barnhart,* 415 F.3d 457, 462 (5th Cir.2005); 20 C.F.R. §§ 404.1546(c), 416.946(c). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See id; Gutierrez v. Barnhart,* No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug.19, 2005). Contrary to the facts in *Ripley,* in this case, there are several medical opinions in the record that assess the effects of Spears' functional impairments on her ability to work, including those of Dr. Bartel as well as the state agency medical and psychological consultants. The ALJ properly considered the evidence as a whole to determine Spears' RFC and the effect Spears' impairments had upon her ability to work. The ALJ discussed the evidence in the record in making his RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See, e.g., Muse,* 925 F.2d at 790. Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required as to this issue.[4]

**B.     Credibility**

Spears also argues the ALJ failed to properly evaluate her testimony and her credibility. (Pl.'s Br. at 16.) Specifically, Spears complains that the ALJ erred by failing to "weigh objective and other evidence in the record and articulate clear reasons for finding the claimant not credible." (Pl.'s Br. at 14.)

---

[4] An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue,* No. 4:08–CV–00503–A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citations omitted).

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms such as pain. 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3P, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3P, 2017 WL 5180304, at *3. A claimant's statements about pain and other symptoms are not conclusive evidence of disability but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A). A claimant's testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a).

In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's own observations. SSR 16-3P, 2017 WL 5180304, at *3–5. Credibility determinations by an ALJ are entitled to deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991) (per curiam). The ALJ is in the best position to assess a claimant's credibility since the ALJ "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir. 1994). Nevertheless, the ALJ's determination or decision regarding credibility must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 16-3P, 2017 WL 5180304, at *10. When assessing the credibility of an individual's statements, the ALJ

considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional capacity, limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3P, 2017 WL 5180304, at *7-8.

The ALJ in this case concluded that, while Spears' medically determinable impairments could reasonably be expected to produce Spears' pain and other symptoms, Spears' statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 25.) In making such a determination, the ALJ properly considered Spears' subjective complaints in light of the factors required by the SSA and SSR. As to the first factor, the ALJ considered Spears' daily activities by noting that Spears has "no limitation" in activities of daily living, and by referencing Spears' testimony that she can complete household chores and run errands. (Tr. 23; *see* Tr. 40–43.) As to the second factor, in which the ALJ is to consider the location, duration, frequency, and intensity of Spears' pain or other symptoms, the ALJ considered Spears' allegations of pain in detail, stating, *inter alia*:

> [Spears'] most recent neurological records indicate she continues to experience episodes of shingles as well as intermittent pain on the right side of her face and neck that she describes as burning and electric shock like pain . . . .
>
> . . . .

> At the hearing, the claimant testified she last worked as a deputy sheriff, but was unable to continue after developing shingles. She testified the pain was a disabling factor in her quitting work, but it also affected her mental ability. She testified she continues to experience flare-ups of shingles every 3-4 months that last for approximately 2 weeks, during which she takes oxycodone for the pain. When she is not experiencing a shingles flare-up, she continues to have neuralgic pain and has little use of her left shoulder due to pain.
>
> . . . [T]he evidence certainly confirms the claimant's medical conditions are more than minor irritations and result in pain that limits her ability to perform work related tasks as indicated in the above residual capacity assessment.

(Tr. 25–26.)

As to the third and seventh factor, in which the ALJ is to consider factors that precipitate and aggravate the symptoms as well as other factors concerning functional limitations and restrictions, the ALJ recognized that Spears' shingles and post-herpetic neuralgia symptoms were both episodic and intermittent. (Tr. 25.) In addition, the ALJ noted that Spears' shingles flare up every three to four months and, when not experiencing a flare-up, she continued to have neuralgic pain and little use of her left should due to pain. (Tr. 25.) As to factor four, the ALJ mentioned several of the medications prescribed to Spears to mitigate her symptoms, including depression medication, anti-viral and steroid medications, and Gabapentin, and noted how Spears responded to each. (Tr. 23, 25.) As to factors five and six, the ALJ noted that Spears' rheumatologist encouraged Spears "to perform strength exercises when her swelling and pain were minimal." (Tr. 25.)

Based on the foregoing, the ALJ did properly consider Spears' credibility and there is sufficient evidence in the record to support that credibility determination. Consequently, remand is not required on this issue.

**RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections to the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above the specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until November 30, 2018 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendations. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED November 16, 2018.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE